STATE of Missouri, Respondent,

v.

Jon Travis **REDIFER**, Appellant.

No. WD 69708.

Missouri Court of Appeals,
Western District.

Aug. 14, 2009.

Robert J. Bartholomew, for Respondent.

Kent Denzel, for Appellant.

Before Division Three: HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and LISA WHITE HARDWICK, Judge.

JOSEPH M. ELLIS, Judge.

In May 2007, Jon Redifer was arrested for driving without a valid license. In July 2007, Moberly Police Officer Aaron Hopper saw a maroon Cadillac travelling toward him. He waited for it to pass so he could identify the driver, whom he believed to be Redifer because the car was similar to Redifer's. Hopper had run a check on Redifer's license a couple of days prior and knew that Redifer's license had been revoked.

The car pulled into a private driveway before it passed Hopper. Hopper turned toward the car. As he was driving toward the car, he saw Redifer exit the vehicle. Hopper got out of his car, and he told Redifer to stop. Redifer turned, saw Hopper, and ran away. Hopper was unable to find Redifer. Later, he confirmed by computer that Redifer's license was revoked.

Redifer was arrested and charged with two counts of driving without a valid license, § 302.020,[1] and one count of resisting arrest, § 575.150. At trial, the following testimony was elicited from Hopper:

Q: What was the reason that you wanted Mr. Redifer to stop?

A: Just to confirm his driver's status.

Q: And after confirming his driving status, what would have been the next step?

A: If the dispatch had confirmed that he wasn't valid, then he would have been arrested for driving while suspended or revoked.

Later on cross-examination he offered more testimony regarding his intentions with the stop:

Q: Now prior to pulling into the [private driveway], you called dispatch?

A: I'm sorry?

Q: You called dispatch prior to him pulling into [the driveway] or after he pulled into [the driveway].

A: It's been so long ago, I'm not really sure.

Q: Okay, but at this point, you don't know that he's revoked?

A: I had run him a couple of days prior. He was revoked at that time.

Q: Okay. Sometime after that point, you get notification from dispatch that he's actually revoked?

A: Yes.

Q: But at that particular point, you didn't know, did you, that he was revoked?

A: I knew two days prior he was revoked. There have been instances that—If I can explain first that when I do a traffic stop, even I know (sic) the person or believe the person is driving without a license, I go ahead and confirm, just to make sure. Give the benefit of the doubt to the person.

Q: So you didn't know for sure. That's why you confirmed with dispatch?

A: Yes.

Redifer filed motions for acquittal at the close of the State's evidence and the close of all evidence which were both denied. The following jury instruction was submitted on the charge of resisting arrest:

Instruction No. 11: As to Count III, if you find and believe beyond a reasonable doubt:

First, that on or about July 4, 2007, in the County of Randolph, State of Missouri, Aaron Hopper was a law enforcement officer,

Second, Aaron Hopper was making an arrest of the defendant for driving without a valid license, and

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

Third, that defendant knew or reasonably should have known that a law enforcement officer was making an arrest of the defendant, and

Fourth, for the purpose of preventing the law enforcement officer from making the arrest, the defendant, resisted by fleeing from the officer,

Then you will find the defendant guilty under Count III of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each of and all of these propositions, you must find the defendant not guilty of that offense.

Redifer was convicted on all three counts and sentenced to four years on each count; each sentence to run concurrently. Redifer appeals only his conviction for resisting arrest. He argues that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to show that (1) Hopper intended to make an arrest when he told Redifer to stop, (2) Hopper was making an arrest, and (3) that Redifer knew or reasonably should have known that the officer was making an arrest.

■■■■ "We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. St. George*, 215 S.W.3d 341, 345 (Mo.App. S.D. 2007) (internal quotation omitted). We examine each of the elements of the crime, reviewing the evidence in the light most favorable to the judgment, disregarding contrary evidence, and granting to the State all favorable inferences from the evidence. *Id.*

Redifer was convicted under section 575.150, which provides that:

1. A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:

(1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer[.]

§ 575.150.

■■■■ Resisting arrest cannot occur unless the officer was in the process of arresting the defendant. *St. George*, 215 S.W.3d at 345. The gravamen of the charge is resisting arrest not fleeing from a police officer. *Id.* The instructions submitted to the jury required it to find that Officer Hopper was making an arrest at the time Redifer fled. It is not necessary for the officer to tell the person he is under arrest if the circumstances show that the officer is attempting an arrest. *State v. Nichols*, 200 S.W.3d 115, 121–22 (Mo.App. W.D.2006) (officers repeatedly telling defendant to show his hands,. lay down, and put his hands behind his back and finding it necessary to use force and pepper spray to subdue him was sufficient to show intent to take into custody/arrest for the purpose of resisting arrest charge).

■■ Although section 575.150 contemplates and allows convictions for fleeing from a lawful stop or detention, we cannot affirm Redifer's conviction on this basis because the jury instruction only allows for a finding of guilt if he was being arrested.

The jury had no instruction on lawful stops or detention. In *State v. Brooks,* 158 S.W.3d 841 (Mo.App. E.D.2005), the officer testified that he followed the truck and engaged his emergency lights but not the siren. *Id.* at 851. The officer did not testify about his intent when he activated the emergency lights, or whether he planned to arrest the defendant. *Id.* The appellate court found that there was no evidence upon which the jury could infer that the officer was arresting the defendant and that, at best, the jury could infer the officer was making an investigatory stop. *Id.*; *See also State v. Dossett,* 851 S.W.2d 750, 751–52 (Mo.App. W.D.1993) (holding defendant not guilty of resisting arrest because officer "testified that he turned his lights on in an attempt to stop the Mustang to investigate to see if the driver was sleepy or intoxicated ... [but] never testified that he intended to arrest the driver"); *State v. Long,* 802 S.W.2d 573, 576–77 (Mo.App. S.D.1991) (holding defendant not guilty of resisting arrest because officer testified "it was his intention 'to stop the pickup and investigate the apparent violation of failing to register the motor vehicle annually' "); *State v. Wanner,* 751 S.W.2d 789, 791 (Mo.App. E.D. 1988) (holding defendant not guilty of resisting arrest because officer intended to stop defendant merely to warn him about his driving habits).

■ To resist arrest, an arrest must be in progress. *St. George,* 215 S.W.3d at 345–46. Officer Hopper stated that he would check with dispatch to see if Redifer was currently licensed and, if he still was unlicensed, he would arrest him. There is no ambiguity in this; he was not arresting Redifer; he was stopping him so he could conduct an investigation into whether he should be arrested. Thus, Redifer's conviction was unsupported by the evidence. Redifer's point is granted, and his convic-

tion for resisting arrest is reversed. We need not address Redifer's other contentions.

The judgment of conviction for resisting arrest is reversed, and the defendant is ordered discharged as to that charge.

All concur.